UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL STIMPSON,

     Plaintiff,

v.                            Case No. 07-13869

UNITED PARCEL SERVICE,          HONORABLE AVERN COHN

     Defendant.

_____/

**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND DISMISSING CASE**

I. Introduction

This is an unlawful termination case under the Family Medical Leave Act (FMLA),

29 U.S.C. §2601, et seq.  Plaintiff Paul Stimpson (Stimpson) is suing defendant United

Parcel Service (UPS) claiming violations of the FMLA.  Before the Court is UPS's

motion for summary judgment.  UPS argues that it is entitled to summary judgment

because Stimpson did not work the minimum 1250 hours needed to be FMLA eligible

and because he failed to provide proper notice of taking FMLA leave.  For the reasons

that follow, the motion is GRANTED.  This case is DISMISSED

II. Background

A. Facts

Stimpson was employed by UPS during two different time periods as a part-time

employee.  His first period of employment was from February 1992 to October 6, 1998.

On October 1, 1998, UPS suspended Stimpson without pay for making inappropriate

statements to a coworker despite previous warnings regarding such misconduct. Stimpson was terminated on October 6, 1998. Stimpson filed a grievance over his suspension and termination. A joint UPS - union committee determined that UPS had good cause for the suspension and termination.

Stimpson then filed an unfair labor practice (ULP) charge with the National Labor Relations Board (NLRB). Stimpson alleged that he was terminated in retaliation for filing prior grievances and for other union activity. On April 8, 1999, the NLRB issued a complaint. On September 30, 2003, the NLRB issued a decision in favor of Stimpson. UPS unsuccessfully appealed from the NLRB's decision. As a result, Stimpson was reinstated with back pay to his former part-time position, effective September 26, 2005.

Stimpson's second period of employment began on September 26, 2005 until May 12, 2006 when he was terminated for excessive absenteeism and tardiness. According to UPS's records, Stimpson had 14 occurrences of unexcused absences without notice, 15 instances of tardiness, 2 other unexcused absences, and several other days off.

With regard to Stimpson's FMLA claim, on Sunday, April 29, 2006, Stimpson was injured when he was hit by a car while riding his bike. That evening, Stimpson called his supervisor and left a voice mail message stating he had been hit by a car. According to the police report, Stimpson declined medical treatment but complained of pain. He was also intoxicated.

Stimpson went to William Beaumont Hospital in Royal Oak, Michigan at approximately 11:00 p.m. on April 29, several hours after the accident. He was discharged about a half hour later with a diagnosis of contusions on his back and left

leg.  Stimpson was prescribed pain medications; however, he did not fill the prescription.

Stimpson did not report to work from May 1, 2006 to May 12, 2006.  On May 4, 2006, a UPS manager called Stimpson and inquired as to why he was not at work. During the call, Stimpson advised that he intended to see a doctor the next day (May 5) and that he would provide medical certification on May 5 of his need to be off work since May 1, 2006.  Stimpson did not provide any documentation on May 5, 2006.

On May 5, 2006, UPS sent Stimpson a "72 hour letter" which stated in part:

> You have failed to provide current medical documentation to justify your continued leave of absence from May 1, 2006 to present.
> Please be advised that you have seventy-two (72) hours to contact your manager and provide the necessary medical documentation to support your absence.  Failure to comply with the above will place you in violation of Article 16 § 2 of the National Master United Parcel Service Agreement.
> Consequently, this unauthorized leave of absence will result in the termination fo your employment with UPS.

Stimpson failed to provide any medical documentation between May 6 and May 12, 2006.  Accordingly, UPS terminated Stimpson effective May 12, 2006.

On May 22, 2006, several days after his termination, Stimpson submitted medical documentation.  Stimpson first provided his medical records from his trip to Beaumont Hospital the day of the accident.  He also provided a note from Beaumont dated April 30, 2006 which states "Off work 4/30 - 5/6/08 for medical reasons."  It is from Emergency Room Physician K. Wilkinson.  Finally, Stimpson provided two notes from a Dr. B. Herr of Physician HealthCare Network.[1]  The first note is dated May 5, 2006 and

---

[1]UPS says the notes are "fabricated" because "it is evident that each note was signed by a different person.  Neither note contains the signature of Dr. B. Herr."  While the notes appear to be forms likely filled out by Dr. Herr's staff, there is no evidence that

simply states that Stimpson is unable to work from May 5, 2006 to May 14, 2006.  The
second note is dated May 12, 2006 and states that Stimpson is unable to work from
May 12, 2006 to May 19, 2006.

On May 23, 2006, Stimpson filed a grievance over his termination, claiming he
was discharged in violation of Article 16, Section 2 of the National Master Agreement.
Article 16 governs leave of absence.  Section 2 sets forth the requirements of an
employee seeking a leave of absence.  Notably, Section 2 does not discuss the FMLA.
Rather, an employee's FMLA rights are discussed in Article 16, Section 6.  Thus, it does
not appear that Stimpson's grievance was specifically based on a violation of his FMLA
rights.  In any event, a hearing was held before a joint committee on July 19, 2006.  The
Committee denied Stimpson's grievance and upheld UPS's termination decision.

On June 1, 2006, Stimpson filed a ULP charge with the NLRB over his
termination.  Stimpson again claimed he was terminated in retaliation for his union
activity.  The NLRB dismissed the charge.

On September 13, 2007, Stimpson filed the instant action, claiming he was
terminated in violation of the FMLA.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that
there is "no genuine issue as to any material fact and that the moving party is entitled to
a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of
material fact when "the record taken as a whole could not lead a rational trier of fact to

_____

Dr. Herr did not authorize the notes.

4

find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be

granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV.  Analysis

A.  FMLA Generally

To establish an FMLA interference claim, a plaintiff must show that: 1) he or she was eligible for the FMLA's protections; 2) the employer was covered by the FMLA; 3) he or she was entitled to leave under the FMLA; 4) he or she provided sufficient notice of her intent to take leave; and 5) the employer denied the plaintiff an FMLA benefit to which the plaintiff was entitled.  See, e.g., Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003).

There is no dispute that UPS is a covered employer.  However, there is a dispute as to whether Stimpson worked the requisite number of hours to make him eligible for FMLA leave and whether he provided sufficient notice to UPS that he would be taking FMLA leave.  Each issue is addressed in turn below.

B.  Whether Stimpson was Eligible for FMLA Leave

UPS first argues that Stimpson was not eligible for FMLA leave because did not work the required number of hours within the past year.  To be "eligible" under the FMLA, an employee must have been employed by the employer at issue for the preceding twelve months and must have put in at least 1,250 "hours of service" during that time.  29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a).  In calculating the "hours of service," the FMLA incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; 29 U.S.C. § 2611(2)(C).  However, § 7 nowhere defines "hours of service."  See 29 U.S.C. § 207; Ricco v. Potter, 377 F.3d 599, 604 (6th Cir. 2004).  Rather, it sets forth the meaning of "regular rate," which

6

primarily guides employers' overtime calculations. 29 U.S.C. § 207(e); <u>Ricco</u>, 377 F.3d

at 604. Under § 7 of the FLSA, "regular rate" includes "all remuneration for employment

paid to, or on behalf of, the employee," and expressly excludes several types of

compensation not made for hours worked. 29 U.S.C. § 207(e).

The FMLA implementing regulations clarify that

> [w]hether an employee has worked the minimum 1,250 hours of service is
> determined according to the principles established under the [FLSA] for
> determining compensable hours of work (see 29 CFR Part 785). The
> determining factor is the number of hours an employee has worked for the
> employer within the meaning of the FLSA.... Any accurate accounting of actual
> hours worked under FLSA's principles may be used.

29 C.F.R. § 825.110(c) (emphasis added). Accordingly, the regulations set forth at 29

C.F.R. Part 785 guide the determination of hours worked for purposes of the FLSA, as

well as our analysis of the FMLA's "hours of service" requirement. <u>See id.</u>; Family and

Medical Leave Act, 60 Fed. Reg. 2,180, 2,186 (Jan. 6, 1995) (codified at 29 C.F.R. §

825.100 et seq.)

The regulations at 29 C.F.R. § 785.1 et seq. "discuss [ ] the principles involved in

determining what constitutes working time." 29 C.F.R. § 785.1. The principles direct a

finding that "all hours are hours worked which the employee is required to give his

employer." <u>Id.</u> at § 785.7 (citing <u>Armour & Co. v. Wantock</u>, 323 U.S. 126 (1944);

<u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944)).

Here, UPS says that taking the hours Stimpson actually worked during his two

periods of employment, it is clear that he did not work the requisite 1250 hours within a

12 month period. UPS breaks down Stimpson's hours as follows:

Last seven months of employment
    September 26, 2005 to April 29, 2006       454.49 hours

Preceding five months
     April 29, 1998 to September 26, 1998     702.13 hours

Total hours     1156.62 hours

Stimpson says that his calculations of Stimpson hours during his two periods of employment result in at least 1250 hours. Stimpson says the correct calculations are as follows:

Last seven months of employment
     September 26, 2005 to April 29, 2006     553.73 or 582.02 hours

Preceding five months
     April 29, 1998 to September 26, 1998     762.46 hours

Total hours     1316.19 or 1344.48 hours

There are problems with both parties' arguments. First, it is not clear whether it is appropriate to count the hours Stimpson actually worked during the last five months of his first period of employment (April 29, 1998 to September 26, 1998). These hours worked are well outside the 12 month window set forth in the FMLA. While UPS says that it "uses a rolling calendar year method for determining FMLA eligibility" citing Article 16 § 2 of the Master Agreement, a review of Article 16 § 2 reveals no language regarding a rolling calendar method, much less how UPS determines whether an employee meets the 1250 hour requirement.

Second, Stimpson argues that the hours he would have worked for which he was compensated for by the NLRB's award should be included. This argument is well-taken. In Rizzo v. Potter, 377 F.3d 599 (6th Cir. 2004), the Court of Appeals for the Sixth Circuit held that the hours-of-service requirement contained in the FMLA's definition of "eligible employee" includes the hours for which an unlawfully terminated

8

employee would have worked.  In <u>Rizzo</u>, the Sixth Circuit held that the plaintiff should be credited with hours she would have worked as reflected in a make-whole (back-pay) arbitration award.

Here, Stimpson was reinstated following a ruling by the NLRB that his first termination was unlawful.  Stimpson submitted an Amended Compliance Specification and Notice of Hearing from the NLRB (Compliance Specification) which apparently details the computations of Stimpson's back pay.  Stimpson says that based on the Compliance Specification, he would have worked an additional 484.0325 hours. Stimpson does not, however, clearly explain how he arrived at this figure or for how many months that covers.  Assuming, arguendo, that Stimpson's calculation is correct and represents hours he would have worked during a five month period, Stimpson may be credited with working an additional 484.0325 hours.  That, however, does not end the matter.

As noted above, UPS says that Stimpson worked 454.49 hours during the last seven months of his employment (from September 26, 2005 to April 29, 2006). Stimpson says he worked at least 553.73 hours during this time.  The discrepancy is explained in UPS's reply brief.  Stimpson included in his calculation all paid hours, including vacation pay and other non-work hours.  UPS is correct that these hours are not included in the calculation.  The FLSA specifies that an employee's "regular rate" of compensation does <u>not</u> include, among other things,

> payments made for occasional periods when no work is performed due to <u>vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause</u>; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an

employee which are not made as compensation for his hours of employment [.] 29 U.S.C. § 207(e) (emphasis added).  Thus, vacation hours and other non-work hours are not properly included in determining Stimpson's hours worked.  UPS's calculation of 454.49 hours is correct and supported by Stimpson's attendance records.

Based on the above, Stimpson worked 454.49 hours for the seven months preceding his termination.  Assuming that he would have worked an additional 484.0325 hours for the remaining preceding five months but for his unlawful termination, Stimpson worked 938.5225 hours, well short of the requisite 1250 hours.  The Court also notes that assuming UPS's assertion that Stimpson's actual work hours must be used, which would include the five months preceding his first termination, he failed to work 1250 hours.  As such, Stimpson is not an "eligible employee" within the meaning of the FMLA.  Summary judgment is appropriate on this ground.

### C.  Whether Stimpson Gave Proper Notice

UPS also says that it is entitled to summary judgment because Stimpson did not give proper notice to UPS that he was taking FMLA leave.  An employee seeking to use FMLA leave must notify the employer that FMLA-qualifying leave is needed.  See 29 U.S.C. §2612(e); 29 C.F.R. §§825.208(a), 825.302(c); Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998).  As stated in Brohm, "[t]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave."  Brohm.  The question is whether Stimpson gave UPS "enough information for [UPS] to reasonably conclude that an event described in FMLA §[2612(a)(1)(D)] has occurred."  Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999).

Federal regulations provide some guidance regarding the legality of notice

requirements.  The regulations require an employee "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated duration of the leave." 29 C.F.R. § 825.302(c).  In such a situation, an "employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example."  Id.  Such "notice" should then trigger the employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee."  Id.  Furthermore, "[a]n employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave."  29 C.F.R. § 825.302(d).  The employee's failure to follow such procedures, however, "will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice."  Id.

Here, between May 1, 2006, and May 12, 2006, Stimpson did not request FMLA leave, give notice of any need for FMLA leave, or provide medical certification of a serious health condition or other qualifying reasons for FMLA leave in the manner specified by UPS policy.  Stimpson made one phone call to a supervisor the day of the accident and informed him of the accident.  He did not call or otherwise inform UPS when he failed to show up for work for the next several days.  On May 4, 2006, he informed his supervisor that he would submit medical documentation after a doctor appointment the next day.  He did not.  Stimpson also did not respond to UPS's letter requesting medical documentation within 72 hours.  Stimpson did not submit any medical documentation regarding his condition until May 22, 2006.  This documentation came 23 days after the accident, and 10 days after his termination.

11

The documentation, detailed above, consists of emergency room records from Beaumont Hospital, a doctor's note from a Beaumont emergency physician, and two notes from Dr. Herr. The emergency room records generally indicates Stimpson fell off of his bike, suffered some contusions to his back and leg, and was prescribed, but did not take, pain medication. The doctors' notes all simply state that Stimpson was unable to work during certain dates. The documentation also does not provide appropriate medical facts within a health care provider's knowledge evincing a serious health condition, nor did it specify that Stimpson was unable to perform any essential functions of his job. Consequently, Stimpson did not satisfy the notice requirements under 29 U.S.C. §2613(b) in seeking FMLA leave. UPS is also entitled to summary judgment on this ground.

SO ORDERED.


 s/Avern Cohn_____
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  August 5, 2008


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 5, 2008, by electronic and/or ordinary mail.


 s/Julie Owens_____
Case Manager, (313) 234-5160